(43 Misc. Rep. 402.)

## RACQUETTE FALLS LAND CO. v. BUYCE.

(Supreme Court, Special Term, Fulton County.    April, 1904.)

1. JURISDICTION — SPECIAL TERM — ACTION FOR BOTH LEGAL AND EQUITABLE RELIEF.

Where an action for damages for a trespass and for an injunction has, by consent of the parties, been sent to the Special Term, and tried there without a jury, the defendant cannot procure a dismissal on the ground that plaintiff has not shown himself entitled to equitable relief.

2. SAME—JUDGMENT.

Where an action for damages for trespass and for an injunction is, by consent, sent to the Special Term for trial, it is the duty of the court to award any judgment which is within the pleadings and testimony.

3. LAND GRANT—TITLE IN STATE—PRESUMPTION.

Where, in an action for trespass, plaintiff claimed title under a patent by the Governor, which did not show how the state became owner, and it

appeared that before issuance of the patent the lands had been set apart, under a statute, to support the gospel and schools in the town where the land was located, and that the trustees were authorized to sell the lands, and that the town superintendent of schools, who was substituted by statute for the trustees, sold to defendant's source of title, the patent could not be presumed to have transferred any title to the patentee.

Action by the Racquette Falls Land Company against George Buyce. Judgment for defendant.

Griffin & Ostrander, for plaintiff.

Lee S. Anibal (A. J. Nellis, of counsel), for defendant.

SPENCER, J. The plaintiff, by its complaint, asks for both legal and equitable relief. It alleges a trespass by the defendant in the cutting of timber upon its lands. It seeks to restrain the defendant from removing the timber so cut. The preliminary injunction was vacated by the Special Term because there was no allegation or proof that the defendant was insolvent. It has always been the practice to deny an injunction pendente lite to prevent the removal of timber already cut unless it appears that the mischief will be irreparable, owing to the defendant's insolvency.

The parties by consent have sent the case for trial to the Special Term. The defendant at no time has insisted upon a jury. The testimony has been taken, and the case is now before the Special Term for decision. The defendant, by his brief, contends that the action is in equity, and that, as there is no evidence which will justify equitable relief, the complaint, under the authority of Ketchum v. Depew, 81 Hun, 278, 30 N. Y. Supp. 794, should be dismissed. With this I cannot agree.

The plaintiff alleges that the defendant threatened removal of the timber cut. The defendant admits that he was about to remove the timber at the time of the service of the injunctive order. If equity lies to restrain the removal of cut timber, it would seem that the allegation and admission were sufficient to justify a restraining judgment. But without deciding whether equity will lie, I am of the opinion that the defendant's objection comes too late; that, under the authority of Everett v. De Fontaine, 78 App. Div. 219, 79 N. Y. Supp. 692, it is the duty of the court to award any judgment within the pleadings and testimony.

The complaint was properly dismissed as to lots Nos. 2, 6 and 7. It refers to them as distinct and separate lots, while the proof submitted has application only to lot 8, and does not justify a finding as to the others. None of these lots has ever been occupied or inclosed, and, being described in the complaint as separate and distinct parcels, the decisions in the cases cited by plaintiff do not apply. In those cases the entire property was described in one parcel by metes and bounds.

The plaintiff claims title under a patent executed by the Governor of the state to the Sackett Harbor & Saratoga Railroad Company under date of July 15, 1856. This grant contains the description of a large number of parcels of land, the most of which are therein stated to have been purchased by the state at tax sales, but the clause which has application to the premises in dispute does not contain anything to indicate

by what manner the state became the owner.  The plaintiff relies upon this conveyance without producing proof of ownership by the state, or of the authority of the Governor to make the sale; claiming that, the premises being wild, unoccupied lands, such ownership and authority should be presumed.  If the premises in question did in fact belong to the state, and were in no way appropriated by it to any particular purpose, I should be inclined to concur in the plaintiff's contention. It, however, appears in evidence that the lot involved in this controversy was set apart by the Surveyor General of the state under the provision of a statute which has existed since 1789, whereby certain lots in certain townships were directed to be set apart for the support of the gospel and schools in the towns in which they were located, and that the trustees elected by such towns were authorized and empowered to take and hold possession of the same, and also to lease or sell as in said statute provided.  By chapter 186, p. 210, of the Laws of 1846, the office of trustee of gospel and school lots was abolished, and the powers and duties of that office conferred upon the town superintendent of schools.  It also appears that, prior to the conveyance under which the plaintiff claims, one Lyman Holmes, as town superintendent of schools of the town of Gilman, in which the lands in question were located, sold and conveyed the same to Lemuel B. Underwood, and defendant traces his title from the conveyance so made.

Under this state of proof, I am of the opinion that the presumption relied upon by the plaintiff has been overcome; that where it appears, as in this case, that the lands have been devoted by the state to a particular purpose, and placed in possession and under the control of a particular officer, charged with duties in regard thereto, with power of sale, and that he has made a sale thereof—a conveyance by another officer at a later date will not be presumed to have transferred any interest in the property, without proof that the state was owner at the time of the later sale.

The rule invoked by the plaintiff, viz.:  "The issuing of a patent by the officers of a state, who have authority to issue it, upon compliance with certain conditions, is always presumptive evidence of itself that the previous proceedings have been regular, and that all the prescribed preliminary steps have been taken; and the recitals in it are evidence against one who claims under the original owner by a subsequent conveyance, or does not pretend to claim under him at all" (De Lancey v. Piepgras, 138 N. Y. 26, 42, 33 N. E. 822, 825)—has equal application to the grant to Underwood as to that to the Sackett Harbor & Saratoga Railroad Company; and therefore it will be presumed that the sale by the town superintendent of schools of the town of Gilman was under the advice and with the consent of the inhabitants of the town, as required by the statute, and therefore valid.  If this be so, then at the time of the conveyance by the Governor the state was not the owner and had no interest in the premises, and nothing passed to the patentee by virtue of that grant, and plaintiff's title fails.

As plaintiff's right of action depends upon its title to the locus in quo, and as it has failed to establish such title, its action must necessarily fail, and there is no occasion to examine questions relating to defendant's title.  The defendant is therefore entitled to judgment

dismissing the complaint upon the merits, with costs. Let findings of fact and conclusions of law be prepared and submitted in accordance herewith.

Judgment accordingly.